1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                         NORTHERN DISTRICT OF CALIFORNIA
7
8   BRYAN EDWARD MAZZA,                        No. C-11-4632 EMC (pr)
9                Plaintiff,
10      v.                                     **ORDER OF DISMISSAL WITH LEAVE
                                               TO AMEND**
11  V. CULLEN, Associate Warden, *et al.*,
12               Defendants.
    _____/
13

14                          I.    **INTRODUCTION**

15          Bryan Edward Mazza, an inmate at Pelican Bay State Prison, filed this *pro se* civil rights

16  action under 42 U.S.C. § 1983.  His complaint is now before the Court for review under 28 U.S.C. §

17  1915A.

18                          II.    **BACKGROUND**

19          Mazza alleged the following in his complaint:

20          Mazza occupies his time in custody by writing books and studying publishing.  He was

21  transferred from a county jail to San Quentin State Prison on January 29, 2010.  Complaint, ¶ 23.

22  Upon his arrival, Defendant property officer Oseguera issued to Mazza all of his property (including

23  writing supplies, drafts and manuscripts of books he was writing).  Mazza made Oseguera "aware of

24  [his] writing and showed him a copy of 'Blood Oath,'" a book Mazza had written.  *Id.*  Once at San

25  Quentin, Mazza continued his writing.

26          On February 13, 2010, Mazza was in a fight and sent to administrative segregation ("ad-

27  seg").  "Despite the volume of writing material and books," Mazza's property was issued to him by

28

correctional officer Carston.  On February 27, 2010, Mazza was sent to Napa County Department of Corrections for a court date.  Mazza took all his property with him and continued his writing.

On April 23, 2010, he was transferred back to San Quentin.  When he arrived, all his property also arrived.  This time, Defendant Oseguera didn't process Mazza's property and instead let Defendant correctional officer Ankerstjern handle it.  C/O Ankerstjern "beg[an] to tear, destroy and throw in the trash, 98% of [Mazza's] property."  *Id.* at ¶ 27.  Mazza tried to communicate to Ankerstjern that he was "a published author," and Ankerstjern laughed and retorted 'I'm happy for ya.'"  When asked why he was destroying the property, Ankerstjern responded, "'You've got too much crap.'"  *Id.*  Ankerstjern was unmoved by Mazza's statement that it had taken him years to write the books.  "Finally, someone was made aware that [Mazza had] adequate funds to send [his] property home."  *Id.* at ¶ 29.  Mazza filled out a trust fund withdrawal slip to pay for his paperwork to be mailed home.  The postage cost him $63.08 for his 30+ pounds of paperwork to be mailed home.  *Id.* at ¶ 29.  Defendants Key and Oseguera were present during "this episode."  *Id.*  Although voluminous paperwork was mailed home, Mazza retained his family photos, published book, dictionary, Thesaurus, a few letters and about 30 pages of a book he recently had finished.  *Id.* at ¶ 30.

On April 26, 2010, Mazza submitted an inmate appeal and later made a formal complaint against Ankerstjern.  His inmate appeal was partially denied at the first level of review with the notation that the staff complaint would be investigated.  *Id.* at ¶¶ 34-35.  Mazza pursued his inmate appeal to the second level, where appeal coordinator Kemp referred it to associate warden V. Cullen. *Id.* at ¶ 48.  Cullen wrote a "'Staff Complaint Response' Memorandum in which he determined that the staff at R&R were in violation of CDCR policy for failing to allow me the option to choose an alternate address willing to accept the U.S.P.S. parcel."  *Id.*  Cullen wrote a separate document suggesting that compensation was owed the inmate, *id.*, although he later received another copy with a notation that staff's action was in full compliance.  *Id.* at ¶ 58.

On May 17, 2010, Mazza received a letter form his mother stating that the U.S. Postal Service attempted to deliver the package containing his manuscripts and other paperwork, but was unable to do so because his family was on vacation.  The Postal Service returned the package to San

Quentin as undeliverable and marked "'Returned To Sender.'"  *Id.* at ¶ 39.  On or about May 18, 2010, Mazza made inquiries and learned from a correctional officer that Oseguera said that he had disposed of the property in the returned package on April 31, 2010.  *Id.* at ¶ 40.  Oseguera had not notified Mazza that the package had been returned as undeliverable or that he had disposed of the property in the package.

On May 12, 2010, Mazza filed an inmate appeal about C/O Oseguera's actions and failure to follow CDCR regulations regarding inmate property.  This appeal apparently was screened out by Kemp and/or Oseguera as duplicative of another inmate appeal.  *Id.* at ¶ 52.

After learning on June 23, 2010 that $63.08 had been deducted from his trust account to pay for postage to mail the parcel home, Mazza filed another inmate appeal about that.  *Id.* at ¶ 42.

Mazza later filed another inmate appeal to CCII Kemp, who responded unsatisfactorily and sent a new copy of an earlier response that appeared to be different from the earlier response.  *Id.* at ¶ 56.  The new response was marked "Amended 2/2/11 by A. Kemp CCII," and stated that staff did not violate policy, but did not explain why the finding had been changed.  *Id.* at ¶ 57.

### III.   DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  In its review the Court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  *See id.* at § 1915A(b).  *Pro se* pleadings must be liberally construed.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

///

///

1    The complaint fails to state a claim upon which relief may be granted under § 1983.  As it is

2  not entirely clear that it would be impossible for Mazza to amend to state a claim, the complaint will

3  be dismissed with leave to amend.

4    First, Mazza's claim that prison officials wrongly destroyed his paperwork is not actionable

5  under § 1983.  Allegations that a Plaintiff has been deprived of his property negligently or

6  intentionally without a pre-deprivation hearing do not state a due process claim under § 1983 if the

7  deprivation was random and unauthorized, *see Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (state

8  employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels v.*

9  *Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional

10  destruction of inmate's property), because California provides an adequate state post-deprivation

11  remedy, *see Zinermon v. Burch*, 494 U.S. 113, 128-29 (1990) (where state cannot foresee and

12  therefore provide meaningful hearing prior to deprivation, statutory provision for post-deprivation

13  hearing or common law tort remedy for erroneous deprivation satisfies due process).  The complaint

14  alleges that a correctional officer improperly destroyed some of Mazza's property and improperly

15  required him to dispose of other property by mailing it home, and that another correctional officer

16  improperly destroyed the property when it was returned by the U.S. Postal Service as undeliverable

17  to the address to which Mazza had sent it.  These allegations show random and unauthorized

18  property deprivations that are not actionable under § 1983.  Because state law provides a remedy for

19  such deprivation of property, the claims of random and unauthorized deprivations of property must

20  be pursued in state court.

21    Second, the complaint does not state a claim upon which relief may be granted against those

22  Defendants who allegedly improperly denied or improperly processed Mazza's inmate appeals.  The

23  failure to grant an inmate's appeal in the prison administrative appeal system does not amount to a

24  due process violation.  There is no federal constitutional right to a prison administrative appeal or

25  grievance system for California inmates.  *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988);

26  *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).  The denial of an inmate appeal is not so

27  severe a change in condition as to implicate the Due Process Clause itself and the State of California

28  has not created a protected interest in an administrative appeal system in its prison.  California Code

of Regulations, title 15 sections 1073 and 3084 grant prisoners in the county jails and state prisons a purely procedural right: the right to have a prison appeal.  The regulations simply require the establishment of a procedural structure for reviewing prisoner complaints and set forth no substantive standards; instead, they provide for flexible appeal time limits, *see* Cal. Code Regs. tit. 15, § 3084.8, and, at most, that "[n]o reprisal shall be taken against an inmate or parolee for filing an appeal," *id.* at § 3084.1(d).  A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest.  *See Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993); *see also Antonelli*, 81 F.3d at 1430 (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause).  Mazza had no federal constitutional right to a properly functioning appeal system.  Therefore, an incorrect decision on an administrative appeal or failure to process the appeal in a particular way did not amount to a violation of his right to due process.

Third, Mazza contends that the confiscation of his property violated his First Amendment rights, but has not alleged any facts suggesting that any Defendant acted because of the content of his paperwork, or even because it was written material at all.  Indeed, his allegations indicate that it was the excessive amount of property, rather than the kind or content of the documents in the property, that prompted Ankerstjern to begin disposing of Mazza's property and to make him mail home the other excess property.  *See Skinner v. Arizona Dep't of Corr.*, 399 F. App'x 265 (9th Cir. 2010) (prisoner's "First Amendment claim was properly dismissed because the confiscation of his books was random and unauthorized, and not based on their content").

Fourth, Mazza alleges that Defendants Ankerstjern and Oseguera retaliated against him by destroying and improperly disposing of his property.  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  Mazza contends that Ankerstjern and Oseguera retaliated against him "because of transferring in and out of San Quentin on numerous occasions.  The defendants

employed retaliatory actions because Plaintiff is a published author and 'got tired of processing his property.'"  Complaint, p. 17.[1]  Even with liberal construction, the allegations of the complaint do not state a cognizable § 1983 claim for retaliation.  Mazza's repeated transfers in and out of prison were not constitutionally protected conduct that would support a retaliation claim.  *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977) (otherwise permissible action may support a claim if it "was made by reason of [plaintiff's] exercise of constitutionally protected First Amendment freedoms").

## IV.   <u>CONCLUSION</u>

The complaint fails to state a claim upon which relief may be granted.  Leave to amend will be granted so that Plaintiff may attempt to state a claim.  The amended complaint must be filed no later than **May 4, 2012**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page.  Plaintiff is cautioned that his amended complaint must be a complete statement of his claims and will supersede existing pleadings.  *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint.")  Failure to file the amended complaint by the deadline will result in the dismissal of the action.

IT IS SO ORDERED.

Dated:  April 3, 2012

_____
EDWARD M. CHEN
United States District Judge

---

[1]  Although Mazza put quotation marks around the phrase, "got tired of processing his property," he did not allege that either defendant made the statement.